May it please the Court, I'm Maxwell Bleacher, appearing for the plaintiff, Apollon. Let me set the table in maybe three sentences. In this case, there's a contract, written contract, purporting to appoint the plaintiff as a sales agent for the defendant, Force Protection, to sell its mine-resistant vehicles in five countries in the Middle East. The contract was signed on behalf of Ashford Capital, a major shareholder of Force Protection, by Frank Cavanaugh, who was both a director and officer of Force Protection. Indeed, he was the vice president for product development. The pro tem judge in the Superior Court in Orange County found that there was insufficient evidence of an agency relationship between Ashford or Cavanaugh on the one hand to bind Force Protection to the contract. So therefore, she denied the petition to arbitrate, and the Court of Appeals for the 4th Appellate District in California affirmed that decision. Then we filed an actual breach of contract case in the federal court, recognizing it would be removed if we filed it to the state court. And Judge Carney in the Southern Division of the Central District dismissed that on the ground it was collaterally estopped by the petition to arbitrate. Not so much by the petition itself, but by the underlying determination of the Superior Court judge. Correct. The underlying determination that there was no evidence to support an agency relationship. Well, say, you can say it that way, but basically that there was no agency relationship. Well, but what was wrong with that? Well, I think it was wrong, but let's assume it was right. The question is not whether it's right or wrong independently. Well, but. But whether that finding constitutes. But within the context of that arbitration proceeding, the motion to compel arbitration, she made a factual determination. Correct. And the question now is whether that factual determination within that context constitutes collateral estoppel to the prescriber. Essentially, it's like an issue preclusion. Pardon? Issue preclusion. Correct. Yes, correct. Did you actually litigate that question in the Orange County courts? I'm sorry? I take it your argument is that you didn't actually litigate it because in the procedural context in the state court, there was no discovery. You couldn't depose anyone or you didn't depose anyone, so you weren't able to ferret out all the facts that notwithstanding her decision, that if you had full discovery, you might be able to find evidence of an agency relationship. Essentially, we asked twice after she made this tentative ruling to grant us an evidentiary hearing because Mr. Kavanaugh is a California resident, and he would have blown this argument out of the water. He signed that contract obviously intending to give an agency relationship, a sales agency relationship to the plaintiff to sell the defendant vehicles. And then where is Mr. Kavanaugh in the picture today? Pardon? Where is Mr. Kavanaugh in this picture today? I mean, was he fired from? I think today the picture has changed, and my understanding is he's out of the picture as far as force protection. But at the time, it seemed self-evident to us, in being an officer to promote their product and a director of force protection, the fact that he signed in a box for Ashford shouldn't preclude the question of arbitration. And whether he was authorized to sign that for force protection seemed to us at the time to be an issue for the arbitrator on the merits and not a question of arbitrability. But be that as it may, that's the determination that was made by the superior court judge and affirmed on appeal by the court of appeal. Correct. But that doesn't reach the issue of whether or not it precludes what the Grove case says is a separate and alternative remedy. And let me give you the, if I can. First, you write on a clean slate in two ways. You get the NOVA review, so you're not bound to give any deference at all to Judge Carney, even though we have a healthy respect for him. Second, you write on a clean slate because there isn't a case, state or federal, which holds one way or the other whether a result of the denial of a petition to arbitrate constitutes collateral estoppel on the underlying claim. Not a single case has been cited by the other side, and we can't find any. Judge Carney didn't find any as far as I know. So the question is, you are reaching this in a completely virgin state. Now, there's three reasons that I urge you to reverse this. First of all, the decision that without any discovery and without, more importantly, an evidentiary hearing, a determination in a petition to arbitrate on a fact issue can constitute collateral estoppel on the claim in chief and extinguish it. What's so sacrosanct about discovery and evidentiary hearing? What's sacrosanct? I mean, that is, you know, in arbitration, we do this in superior court and in district court. A motion to compel arbitration is usually done on the papers, on the affidavits. Correct. And on the underlying agreement and documents that the parties point to. Exactly correct. And there's nothing unusual about that. That is correct. Nothing unusual about deciding the arbitration petition on the papers. In fact, that's usual. There's rarely any discovery and there's rarely an evidentiary hearing. But in those circumstances, the Grove case, and this has to be decided in our view on the basis of state law, the Grove case says that that determination without an evidentiary hearing on an issue that requires the development of evidence such as this is not collateral estoppel. It makes the argument that there are alternative remedies. In that case, the trial judge refused to set aside a default judgment. The Grove court said going into court on a new complaint to set aside the default judgment is an alternative remedy. And if you stop for a moment to think, if every potential arbitration litigant is faced with the idea of losing his cause of action because he goes in for arbitration and the trial judge says this is not an arbitrable dispute because of some fact issue, then who's going to be foolish enough to seek arbitration? It wasn't so much that he said there was a fact issue. He just said that your client or that Kavanaugh was not a party to the contract. Yes. He made a finding that there wasn't evidence of an agency relationship. Let me point. Did he make a finding as to apparent authority or ostensible authority? Did what? Apparent authority or ostensible authority to sign on behalf of? Yes. Specifically, she made a finding that there wasn't, because I can pull it out of the excerpt of the record. She made a finding that the evidence was inadequate to establish an agency relationship. But let me point out to you, if we go to trial, let's say, before Judge Carney, we're not dependent upon an agency relationship. We could win the case on the merits on doctrine of promissory estoppel. Based on what? You could win the case based on what? The doctrine of promissory estoppel, which has nothing to do with the agency. We could win the case in the district court on the basis of ratification, which has nothing to do with the question of agency. So the independent claim that we filed for breach of contract raises all kinds of issues that were not raised and not litigated and not decided in the arbitration procedure. But most importantly, if you look at the history, and the ---- were those issues presented in the ---- They were not presented because they're so patently fact-intensive issues. They were totally inappropriate for a petition to arbitrate. The petition to arbitrate simply said, here's a contract. It has an arbitration clause. It was signed by an officer of the defendant corporation. It's clear from the face of the contract he was seeking to benefit the defendant corporation by appointing someone who could sell their product in the Middle Eastern countries, and it's an arbitrable dispute. Now, whether he actually had that authority we submitted was a question for the arbitrator once there was an arbitration. She decided to the contrary, and the court of appeals affirmed that and were willing to accept the fact that this is not an arbitrable dispute. That's what she found. That's what the court of appeals affirmed. But that has nothing to do with the question. If you look at the Groves case and its ancestry, Groves establishes the proposition that modern motion procedure, based primarily on ex parte declarations and which does not involve the adversary producing documents or witnesses, does not constitute a basis for application in California of the doctrine of issue preclusion or collateral establishment. And the Groves court made clear that the rule does not depend upon even seeking an evidentiary hearing, which we did, and it doesn't depend on the party actually asking or seeking or getting discovery. It's just a rule that says the motion procedure is not the correct vehicle to adopt issue preclusion because of the way in which it normally operates. As Judge Paez pointed out, it doesn't normally involve discovery. It doesn't normally involve an evidentiary hearing. And at least the doctrine of collateral estoppel or issue preclusion says there has to be a full and fair opportunity to litigate. Well, let me ask you this. You said a few minutes ago, for promissory estoppel, does there need to be a contractual relationship of some sort? For collateral estoppel? No, I mean for promissory estoppel. I don't think so. I think if you say paint my house and I'll pay you $100 and I go ahead and paint your house, then you've made a promise that's enforceable. Did you have a separate claim in your district court complaint for promissory estoppel? I don't. We have a claim for implied contract. I'm not sure. I'm not a scholar enough to tell you whether that's the same or close enough. But I think certainly, you know, the complaint is a ticket to get into court. And as you develop your evidence, you can amend and do a lot of different things. So I don't think there's anything in the complaint that would preclude alternative theories of recovery, which were not ever presented to or litigated or decided. That's nothing. Well, I just assumed until you said promissory estoppel, I assumed this case was all about breach of contract. Correct. But a written contract. Correct. It's a written contract. Well, promissory estoppel is an equitable remedy. Yeah. But the Groves case takes all of these arguments into account and talked about this as an alternative remedy. It says the limitations on the motion procedure that California courts do not decree the denial of the motion as a bar to a subsequent action. That's the overriding principle. Now, the defendant comes along and says there's something in Groves that limits that to motions to set aside default judgments. But I've read Groves and invite you to read Groves and see if Groves says that. It doesn't say that. In fact, it talks about motion procedure in general and talks about why the practice of taking motion procedure and applying it for collateral estoppel results in a basically a denial-of-due process. Tell me the other theories unrelated to contract. I mean, I don't necessarily – I didn't read the implied contract claim in the complaint as a promissory estoppel claim. Do you think you would have to amend the complaint if you were going to pursue an extra point? Eventually, we may. But if we – if my premise is correct, that this is a new and separate proceeding, then collateral estoppel doesn't go – doesn't bar going back to the district court and saying that, in fact, this man was authorized to sign this contract and did so, or at least to create that as a jury issue. The whole idea is if collateral estoppel doesn't attach because of the finding on the arbitration issue, we're free to start over again. That's exactly what Groves said. It's an alternative procedure. You go in and you start de novo. All right. Do you have a few? I'll hold on a couple minutes. Okay. Thank you. Good morning, Your Honors. May it please the Court. My name is Peter Villar on behalf of Force Protection, Inc. Your Honors, RJG filed breach of contract claims against Force Protection in Federal court after two California courts had already decided in prior proceedings that Force Protection is not a party to the contract, has no obligations under the contract, and cannot be otherwise bound by the contract under any theory, including agency, estoppel, ratification, or third-party beneficiary. Well, you know, this is where I have a problem with your argument. I'll just put it out there. What the courts were deciding, the state courts, was whether an FBI was bound to arbitrate by this contract. And when both of them ruled, they used this language. They said, although RJG propers several theories on how a non-party can be compelled to arbitration, including third-party beneficiary, voluntary expectance of benefits, and equitable estoppel, there's a lack of evidence before the court to support any of these theories. So what it was deciding was necessarily restricted to the context of being bound to arbitration. What I hear Mr. Bleacher talking about today is something that's extra-contractual. And I'm beginning to think, and you're going to have the opportunity to dissuade me, but I'm beginning to think that maybe the district court judge applied this language over broadly and out of context to bind collateral estoppel. So I guess I'll answer your question in two parts. First of all, there was three – Well, to dismiss on the basis of collateral estoppel. I mean, maybe FBI isn't a party to the contract and can't be forced to arbitrate. But that doesn't mean that FBI didn't commit some other kind of tort in disavowing a responsibility to RJG. Or that there might be some equitable remedy. Correct. And there's two – so there's, I guess, two points in response to your question, Your Honor. First of all, the – RJG asserted three causes of action in the Federal District Court, breach of contract, breach of written contract, breach of implied contract, and breach of implied covenant of good faith and fair dealing. The court – the breach of contract claim and the breach of the implied covenant of good faith claim both depend on a contract. The breach of implied contract claim does not depend on a written contract. That claim was dismissed on statute of limitations grounds. That claim is not being appealed today. So the only two issues – the only two claims that they have appealed and the only – are the breach of contract claim and the breach of the implied covenant of good faith and fair dealing claim. And those two claims are precluded because the two California courts have already found that there is no written contract involving force protection. And in further response to Your Honor's question, what the California Court of Appeals said in its decision on the petition to compel arbitration was that the threshold issue in deciding whether or not to compel arbitration was whether or not there was an enforceable agreement between the parties. The court said it – stated the right to arbitration depends on a contract, and a party can be compelled to submit a dispute to arbitration only if the party has agreed to do so in writing. The policy favoring arbitration does not eliminate the need for an agreement to arbitrate and does not extend to persons who are not parties to the agreement. There was extensive briefing, affidavits, documents, and argument by the litigants in the superior court and the court of appeal. And ultimately, the court of appeal correctly found what you can see on – based on the plain language of the agreement. The court stated by its explicit terms the agreement was executed by RJG and Ashford Capital, not force protection. And the court stated to ignore this clear intention as a technicality, to hold the contract was enforced – was in fact executed on behalf of a different company, defies all the rules, logic, and reason. And that's true. And, Your Honor, and just to briefly touch on the agency issue that was raised, the interesting thing is, first of all, the agency argument was fully litigated in the superior court, and it was fully litigated de novo on appeal. And because we didn't spend a lot of time briefing this issue, I just want to quote some of the language from the court of appeal on this agency issue, because it's really a nonissue in terms of whether or not the claims were dismissed in this case. And so this is what the court said. In fact, the court began with the agency argument. The court of appeal said that RJG asserts the court improperly ignored facts supporting an agency relationship. RJG asserts there was ample evidence of force protection's intimate relationship with Ashford. We disagree. After reviewing the record, we conclude all the evidence related to the relationship between force protection and Kavanaugh as an individual, not between force protection and Ashford, the party to the contract. And then the court went on to say, and this is an important issue because counsel brought up the fact that they would have done discovery to show an agency relationship between force protection and Mr. Kavanaugh. And the court of appeal said that doesn't matter. It said it is undisputed that Mr. Kavanaugh was on force protection's board of directors. He was vice president of business development, and he owned a percentage of the company. This evidence tends to prove that Kavanaugh had authority to act on force protection's behalf. But the agreement at issue in this case was executed by RJG and Ashford, executed by Kavanaugh in his capacity as chairman of Ashford. And then it says Kavanaugh did not execute the agreement as an individual or as a representative agent of force protection. The agency theory fails because there is no evidence of an agency relationship. And then it goes on to make an important point, and it says, not surprisingly, RJG fails to cite a single case to support the theory that it is a mere technicality that Kavanaugh signed the agreement as chairman of Ashford, but really he was acting in his capacity as director of business development of a totally different company. We view the basic rules of contract law to be more than mere technicalities. Does that also respond to opposing counsel's observation that a ratification theory would have been different? Correct, Your Honor. And the court of appeal dismissed the ratification theory on the same ground. It simply doesn't matter. That's why the petition to compel arbitration proceeding is in essence a suit in equity to compel specific performance. And in that procedural setting, the Petitioner actually has a broader opportunity to compel a litigant to arbitration than to hold them liable for breach of contract. So in that, in the petition to compel arbitration setting, they were able to make arguments about agency, third-party beneficiary, ratification estoppel. But with respect to a breach of contract claim, their breach of contract and breach of the implied covenant claims go away just based on the fact that force protection is not a party to the agreement. Well, the district court dismissed this with prejudice. And I understand from reading the order that he didn't have oral argument. Was there any discussion or request to amend the complaint to state a claim other than in contract? No, Your Honor. They filed their initial complaint, and then they filed an amended complaint. And neither the initial complaint nor the amended complaint had any other causes of action other than the three that I mentioned. And they never asked for an opportunity to amend for a third time. But did they have the opportunity to ask for a lead to amend? I believe there's a procedure, Your Honor, in the district court to file a motion for leave to amend. They never did that. So my understanding of the arbitration procedure is that it's supposed to be pretty summary. That is to say, you know, the whole benefit, the whole idea of providing for arbitration is that it's a quick and alternative remedy to litigation. So generally there is, once a motion to compel is filed, there is no discovery. Just you do it fairly quickly on affidavits and whatnot. It didn't seem very quickly in this situation, but it is a unique. What was different about this situation, then? Just the amount of briefing that went into this petition to compel arbitration. This was an unusual situation in which they were trying to compel a non-party to arbitration under these theories that the courts rarely utilize. And so there was more briefing, more argument, more affidavits, more documents than in the typical petition to compel arbitration setting. But to respond to Your Honor's question directly about the opportunities in a petition to compel arbitration action, the California courts have held, and we cited the Booten case, that a petition to compel arbitration is in essence a suit in equity to compel specific performance of a contract. It stated that in considering a petition to compel arbitration, a trial court must make the preliminary determinations as to whether there is an agreement. And in that situation, a party is entitled to do discovery. The Discovery Act applies to a petition to compel arbitration. In this case, RJG did not serve any discovery. They did not request any discovery. And then as counsel pointed out, after they lost at the hearing and the court indicated that the court was going to deny the petition to compel arbitration as to force protection, then at that point they asked to do an evidentiary hearing. But again, I can't emphasize enough that when the court said, well, you know, why do you want to do an evidentiary hearing, the reason they wanted to was to establish an agency relationship between force protection and Mr. Kavanaugh. And ultimately, the superior court in the court of appeals said it doesn't matter. Assume that to be true. We assume that all to be true, that they had an agency relationship. But you still can't – they're still not a party to the contract and you still can't compel them to arbitration. So Mr. Bleacher places a lot of weight on, I think it's Groves? Correct. Why does it have – he says it should control the outcome here. Why is that not so? Your Honor, the Groves case is a very – or applies a very narrow exception to the collateral estoppel doctrine for cases involving default judgments. The Groves court itself emphasized that its holding was limited to the specific context of the – of a default judgment. Because Your Honor asked, the quote from the court is that the holding was limited to the specific context of the present case where the issue is whether the prior subsequent independent action in equity to set aside the prior judgment. The court – the Groves court explained that the remedies of a motion to vacate a default judgment and an independent action in equity are cumulative under California law. And so in that specific procedural framework, pursuing one remedy does not preclude the other. But the California court of appeal later just a couple years ago in Jackson v. Yarbray, which involved another collateral estoppel case involving a prior motion for attorney's fees, the court distinguished Groves and emphasized that Groves expressly limited its holding to that particular default context. The Jackson v. Yarbray case explained that the reason for limiting collateral estoppel in the Groves context is that the information needed to decide the merits of the request to set aside the default may well require compelled testimony from the opposing party regarding its efforts to serve the summons and complaint. And I want to point out as well, Your Honor, that even in the default context, California courts have held that an exhaustive adversarial hearing is not needed in every case in order to preclude relitigation of an issue. For example, in Barker v. Hull, which we've cited, the court applied collateral estoppel to an issue in a default proceeding, which was the existence of an oral promise, even though there was no evidentiary hearing. So the default context has been the only exception that I'm aware of under California law where collateral estoppel would not apply. And even in the default context, a complete adversarial hearing is not necessary for collateral estoppel to apply. Is there anything in the record anywhere that says anything about Mr. Kavanaugh's position as to what went on here? Mr. Kavanaugh's position as to the contract? Yes. The contract or the series of dealings. There was one quote from the – what they submitted in – what RJG submitted in the trial court was a number of affidavits from the principal of RJG and some other individuals. Then they submitted a number of documents and e-mail communications between Kavanaugh and RJG's principal. And what was interesting, and the court of appeal pointed that out, looked at that evidence as well, and I'm sure I have that quote right here, but basically pointed out that what was interesting is when one of the e-mails, the only e-mail where they addressed this agreement, Mr. Kavanaugh said, I'm not – as you know, I'm not empowered or authorized to enter into any agreement on behalf of force protection. So the California court of appeals said even aside from the key issue, which is that force protection is not a party, and even though the – whether or not he was an agent of force protection doesn't matter, they went on to say if you look at the evidence, the evidence shows that he's not authorized or empowered to enter into any contract on behalf of force protection either. And, Your Honor, just finally I wanted to point to a few public policy arguments. The United States Supreme Court and California Supreme Court have held that collateral stoppables serves important public policies, including conserving judicial resources, avoiding the harassment of parties through repeated litigation, preventing inconsistent judgments, which undermine the integrity of the judicial system. All of those policies apply here. This is now the fourth court in – fourth different court in four years that has heard these same issues. The district court stated that particular attention is owed to the important public policy of preventing inconsistent judgments, which undermines the integrity of the judicial system. The court pointed out that denying preclusive effect to the determination of California court – of the California courts would plausibly risk inconsistent determinations because if the district court found that force protection was a party to the contract, then that would be contrary to the California court's decisions that force protection was not a party to the contract. And, in fact, if the district court somehow found that force protection was a party to the contract, force protection would be compelled to arbitrate the dispute in direct conflict with the California court – Superior Court and Court of Appeals decisions. All right. Thank you very much, counsel. Thank you, Your Honor. I'd like to make four discrete points, not necessarily in the order of their importance. Mr. Kavanaugh did not file a declaration in the case, so we don't know what his position was. Later, when it looked like litigation might result, he sent an e-mail, said he wasn't authorized to sign a contract. Well, if that's true, then he committed fraud on Mr. Gagnon and on the company inducing them to bring a contingent of Defense Department officials from Pakistan to South Carolina to meet with the force protection people. That meeting provides additional evidence, my second point, on ratification. If force protection is meeting with people from Pakistan arranged by Mr. Gagnon, then there is a strong argument that they ratified the contract or at least engaged in conduct from which promissory estoppel could be argued. The third point is that there is a decision of the Court of Appeals in the State of California, which Judge Wardlaw in the Kostinich case said state law controls here. So the California Court of Appeals for the Fourth District in a case called Bhutan said where you have a motion on the propriety of arbitration and the two parties say prevent completely contradictory versions of what happened, the Fourth District said the proper thing to do is to hold an evidentiary hearing. And that was binding on this judge pro tempore in the Fourth Appellate District. And when we asked twice for an evidentiary hearing, she said no. So if you apply the Bhutan case to here, you would come to the conclusion that we've been denied due process because there should have been an evidentiary hearing in these circumstances. The last thing I want to do is call your attention as forcefully as I can to Groves. Groves at page 668 in the left column tells us that, yes, there's a procedure to get summary disposition. It's simpler and it's faster. But this is what they say. The motion procedure is simpler and more convenient. The party should be entitled to resort first to the convenient and expeditious remedy without penalty to the bar of collateral estoppel if the motion is denied, without collateral estoppel if it's denied. Despite denial of the motion, the party may then pursue an independent action that affords the party all the advantages of a regular trial on the issue. That's the law in California. And it said applying that to the present case, Groves should not have been barred by the doctrine of collateral estoppel. The subsequent action, it said, is not barred even if the trial court actually decides the disputed issue against Groves on the motion. Because of the limitations of the motion procedure, the California courts do not treat the denial of the motion as a bar to a subsequent action. That, I submit to you, with due respect, is the controlling principle here that should require reversal. Thank you. All right. Thank you very much, counsel. RJG Consultants versus Forest Protection is submitted, and the court will adjourn this session for today. All rise for the second round of hearings. All rise for the second round of hearings. Okay.
judges: Wardlaw, Paez, Rawlinson